IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CARLTON MCDOWELL, SARAH NYAMUSWA, and THERON CYRUS,<br><br>Plaintiffs,<br><br>v.<br><br>MORGAN STANLEY & CO., INC.<br><br>Defendant. | FILED: MAY 21, 2008<br>08CV2966        TC<br>JUDGE NORGLE<br>MAGISTRATE JUDGE ASHMAN<br><br><br>Jury Trial Demanded |

## COMPLAINT

Plaintiffs Carlton McDowell, Sarah Nyamuswa, and Theron Cyrus, by and through their attorneys, Stowell & Friedman, Ltd., hereby file this Complaint against Defendant Morgan Stanley & Co., Inc. ("Morgan Stanley," "Defendant," or "the Firm"), and state as follows:

## OVERVIEW

1. Morgan Stanley is a leader in the retail brokerage industry, having "one of the largest retail brokerage networks and domestic retail locations in the United States."[1] Morgan Stanley employs over 8,000 registered brokers, called Financial Advisors ("FAs"), who provide brokerage and wealth management services and serve as the face of Morgan Stanley to its individual and institutional clients.  Opportunities for compensation and advancement available to Morgan Stanley FAs, however, vary widely depending on their race.

2. Morgan Stanley maintains a race-biased corporate culture and stereotypical views of African-American FAs and clients that create a hostile environment where occupational segregation and disparate treatment are condoned and perpetuated.  Morgan Stanley's Firm-wide

---

[1] Source: http://www.morganstanley.com/about/careers/branchopp.html

corporate culture and harmful racial stereotypes infect its policies and form the basis of personnel decisions that disadvantage African-Americans. African-Americans are dramatically underrepresented as FAs and in management and executive positions at Morgan Stanley and are paid substantially less than their counterparts who are not African-American. Defendant treats African-American FAs differently and less favorably than FAs who are not African-American and does not provide African-Americans with equal opportunities to earn income and advance to management. These disparities result from Morgan Stanley's systemic, intentional race discrimination and from its intentional retention of policies and practices that serve no reasonable business purpose yet have a disparate impact on African-Americans.

3. Plaintiffs charge that Morgan Stanley employs company-wide policies and practices that deny African-Americans the same resources, sales support and business and management opportunities as employees who are not African-American. Morgan Stanley has long been aware of the dramatic underrepresentation, higher attrition, and lower compensation of its African-American employees, but has failed to remedy these problems.

4. Plaintiffs are former Morgan Stanley Financial Advisors[2] and class members in the nationwide race discrimination class action *Jaffe v. Morgan Stanley*, No. 06-3903. Plaintiffs have opted out of the proposed *Jaffe* settlement because they believe that the proposed relief will neither bring about meaningful reform at Morgan Stanley nor remedy the harms they have suffered. Plaintiffs therefore filed this lawsuit in order to vindicate their rights. Plaintiffs have been harmed by the Firm's company-wide pattern or practice of race discrimination and retaliation against African-Americans.

---

[2] As used herein, the term Financial Advisors includes Financial Advisor Trainees and "producing" managers, *i.e.* those given manager titles or responsibilities but who also maintain a retail brokerage book of business.

**JURISDICTION AND VENUE**

5. Plaintiffs' claims arise under 42 U.S.C § 1981,[3] and this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

6. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391(b). As set forth in paragraphs 9 through 11 below, the three plaintiffs live in three different states, and one of the Plaintiffs worked at a Morgan Stanley branch office in this District, where he was subjected to unlawful treatment by Morgan Stanley. Plaintiffs were subjected to and harmed by Defendant's firm-wide discriminatory employment practices. In addition, Defendant is licensed to do business and maintains a number of branch offices in this District.

**PARTIES**

7. Defendant Morgan Stanley & Co., Inc.[4] is a Delaware corporation with its principal place of business in New York. Morgan Stanley provides a wide variety of financial products and services to its global and domestic clients, which include corporations, governments, financial institutions and individuals, and manages approximately $700 billion of client assets.[5] As part of its brokerage, investment advisory and financial and wealth planning services, Morgan Stanley employs more than 8,000 persons nationwide as Financial Advisors to service clients in over 500 offices, including approximately 450 retail locations in the United States. Morgan Stanley is registered with the Securities and Exchange Commission ("SEC") as a broker-dealer

---

[3] The Plaintiffs will file charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). After they have exhausted their administrative remedies, Plaintiffs will seek leave to amend the Complaint to include claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII").
[4] On April 1, 2007, Morgan Stanley merged with Morgan Stanley DW Inc., an affiliated broker-dealer registered with the SEC, into Morgan Stanley & Co.
[5] Source: www.morganstanley.com and the Company's 2006 Form 10K; *see also* Note 1 to the Consolidated Statement of Financial Condition of Morgan Stanley as of May 31, 2007.

and with the Commodity Futures Trading Commission ("CFTC") as a futures commission merchant.

8. Morgan Stanley, Inc., the parent corporation of Morgan Stanley, is a publicly-traded, global financial services firm and Fortune 500 corporation incorporated in Delaware and headquartered in New York. In 2006, Morgan Stanley, Inc. achieved revenues of approximately $34 billion and a net income of nearly $7.5 billion and maintained shareholders equity of nearly $35 billion.

9. Plaintiff Carlton McDowell is African-American and a resident of Illinois. McDowell was employed by Morgan Stanley as an FA in the Chicago, Illinois office at 71 W. Madison from 1996 until December, 2003. Throughout his employment at Morgan Stanley, and pursuant to Defendant's pattern or practice of discrimination and company-wide discriminatory policies, McDowell was denied business opportunities on account of his race and treated worse than similarly situated Morgan Stanley employees who were not African-American. McDowell lost income and was otherwise harmed as a result of Defendant's unlawful conduct.

10. Plaintiff Sarah Nyamuswa is African-American and a resident of Nevada. McDowell was employed by Morgan Stanley as an FA in the Las Vegas, NV office from April, 2007 until February, 2008. Throughout her employment at Morgan Stanley, and pursuant to Defendant's pattern or practice of discrimination and company-wide discriminatory policies, Nyamuswa was denied business opportunities on account of her race and treated worse than similarly situated Morgan Stanley employees who were not African-American. Nyamuswa lost income and was otherwise harmed as a result of Defendant's unlawful conduct.

11. Plaintiff Theron Cyrus is African-American and a resident of Ohio. Cyrus was employed by Morgan Stanley as an FA in the Beechwood, OH office from February, 2002 until

May, 2004.  Throughout his employment at Morgan Stanley, and pursuant to Defendant's pattern or practice of discrimination and company-wide discriminatory policies, Cyrus was denied business opportunities on account of his race and treated worse than similarly situated Morgan Stanley employees who were not African-American.  Cyrus lost income and was otherwise harmed as a result of Defendant's unlawful conduct.

## TIMELINESS OF CLAIMS

12.  Plaintiffs' claims have been stayed and tolled by two class actions and two class standstill or tolling agreements.  First, on August 17, 2007, a nationwide race discrimination class complaint against Morgan Stanley, *Jaffe v. Morgan Stanley*, No. 06-3903, was filed in the Northern District of California.  Plaintiffs are members of the proposed class in that action, and their claims are tolled during the pendency of the action.  Second, Morgan Stanley also agreed to a class standstill agreement in the *Jaffe* action that tolls the race discrimination claims of class members as of January 23, 2007.  Third, on October 3, 2007, an additional race discrimination class action against Morgan Stanley, *Moore v. Morgan Stanley*, No. 07-5606, was filed in the Northern District of Illinois.  Plaintiffs are members of that proposed class as well.[6]  Finally, Morgan Stanley entered into representative standstill agreements with a group of plaintiffs alleging nationwide race discrimination claims (the *Moore* group).  Those agreements put Morgan Stanley on notice of class-wide race discrimination claims and tolled the claims of potential class members, including Plaintiffs, as of August 8, 2006.

## GENERAL PRACTICES OF DISCRIMINATION

13.  The Financial Advisors who work at Defendant's branch offices across the country develop, advise and service the Firm's clients.  FAs are supervised by branch managers who

---

[6] The proposed class in *Moore* is broader than the *Jaffe* class and includes job applicants and producing managers in addition to FAs and FA Trainees, as well as claims not covered by *Jaffe*, such as constructive discharge, among other claims.

5

implement the Firm's company-wide policies and distribute resources and income-generating opportunities to FAs in the offices they manage. As a result of Defendant's systemic discrimination, African-Americans are nearly excluded from branch management. On information and belief, of the approximately 500 branch managers at Morgan Stanley, fewer than five branch managers are African-American.

14. An FA obtains clients in a number of ways, including through the FA's own efforts and contacts, as well as through transfers from other FAs; membership in a partnership, or team of brokers; and by assignment of accounts, leads, referrals, walk-ins, call-ins, and other opportunities provided by the Firm. The Firm ranks and compensates its FAs, and distributes valuable resources, on a comparative and competitive scale based on a combination of revenue generated from client accounts and an FA's length of service.

15. All FAs are compensated pursuant to uniform, nationwide compensation plans. Compensation is largely based on commissions generated from the client accounts that comprise an FA's book of business.

16. Due to the competitive manner in which FAs are compensated, a level playing field and fair distribution of resources and opportunities is essential. Defendant's policies and practices, however, do not create an equal playing field for African-Americans but result in significant compensation and promotional disparities. These disparities are driven in large part by Defendant's unequal and discriminatory practices with regard to the distribution of accounts and other income-generating opportunities, sales support, and its corporate culture that permits and reinforces the differential treatment of African-Americans.

17. Defendant has a strong corporate culture that is biased against African-Americans and reinforces the differential treatment of African-Americans. Morgan Stanley maintains

stereotypical views about the skills, abilities and potential of African-Americans that form the basis of personnel decisions. Defendant maintains race-based attitudes about its clients as well as its FAs, as is evident by management and Firm-wide efforts to steer African-American FAs to African-American clients, and vice versa. Defendant's corporate culture creates an environment where occupational segregation, disparate treatment, and harassment are pervasive and are condoned. By way of example, Plaintiffs provide the following examples of Morgan Stanley's biased culture:

- A Morgan Stanley branch manager openly asked his colleagues why Morgan Stanley bothers to hire African-Americans because African-Americans cannot succeed in the retail brokerage business.

- A successful Morgan Stanley FA in California openly referred to one Morgan Stanley office as the one with the "nigger and the spic," or words to that effect.

- Morgan Stanley managers regularly steered African-American Financial Advisors toward African-American clients, assuming this was the only business they could garner. Managers engaged in similar "race-matching" with mentoring and partnership opportunities between FAs.

- A sales manager referred to an African-American FA's book of business as the "black book" because many of his clients were African-American.

- A branch manager openly made jokes in the office about African-American FAs and made derogatory remarks about African-American clients.

- Another branch manager asked an African-American candidate how he was going to generate clients because he "sounded black" and clients would be able to tell he was African-American on cold calls and would not want him as their Financial Advisor.

- One branch manager told an African-American Financial Advisor that "black males do not make it" in the retail brokerage business, or words to that effect.

- African-Americans were regularly excluded from networking opportunities and office outings.

18. Defendant's human resources and legal departments are ineffective at resolving complaints of race discrimination and retaliation and, as a result, many African-Americans recognize the futility of lodging internal complaints. Those who do come forward suffer retaliation.

19. Defendant's pattern and practice of race discrimination is demonstrated in part by its historic and continued underrepresentation of African-American brokers and management. Defendant has been on notice of its disparity in treatment and opportunities for African-Americans for over thirty years. In the 1970s, the Equal Employment Opportunity Commission ("EEOC") sued Defendant's predecessor, Dean Witter, for engaging in a pattern and practice of race and sex discrimination with respect to recruitment, hiring, assignment, training, promotion, and other terms and conditions of employment. *See EEOC v. Dean Witter & Co, Inc.*, Case No. 78-839 (E.D. Pa.).

20. Little has changed in the three decades since the EEOC sued Dean Witter. On information and belief, African-Americans are still underrepresented to a statistically significant degree as compared to their availability in the relevant labor markets as Financial Advisors and in management at Morgan Stanley. On information and belief, in over thirty states, Morgan Stanley does not employ any tenured African-American Financial Advisors. The dramatic underrepresentation of African-Americans as FAs is due to the Firm's discriminatory recruiting and hiring practices. Defendant's nearly all-white management team is responsible for hiring decisions and applies higher standards to African-American candidates.

21. The few African-Americans hired by Defendant suffer an attrition rate substantially higher than the attrition rate of non-African-Americans. A Regional Manager at the Firm told an African-American Financial Advisor that the "wash-out" rate of African-Americans was over 90%. The high attrition rate and dramatic underrepresentation of African-Americans is attributable to Defendant's ongoing differential treatment of African-Americans and its failure to provide African-Americans with equal opportunities to succeed.

22. The success of FAs is contingent on a number of factors, including access to partnership opportunities and to business opportunities like accounts of retiring or departing brokers, leads, referrals, and opportunities for clients to participate in initial public offerings ("IPO"). Morgan Stanley has implemented and maintains uniform, company-wide policies and practices that discriminate against African-Americans in the distribution of these opportunities. As a result, African-American FAs are nearly excluded from favorable partnerships and do not receive the same level of account distributions, referrals, leads, IPOs, walk-ins and call-ins as their counterparts who are not African-American, and so earn less income.

23. FAs also rely on sales, administrative and managerial support to develop and service their books of business. African-American brokers, however, do not receive the same level of sales and managerial support as brokers at Morgan Stanley who are not African-American. African-American brokers are often assigned fewer and less experienced sales assistants whom they have to train, whereas similarly situated non-African-American brokers are assigned experienced, and often licensed, sales assistants. As a result, African-American brokers must perform most of their own administrative tasks and have less time to devote to developing and serving clients.

24. Similarly, African-Americans are often also denied the managerial support necessary to operate a smooth, efficient and profitable business. Pursuant to company-wide policies and practice, Morgan Stanley managers distribute resources and business opportunities to FAs in the offices they manage. In addition to allocating limited resources, such as accounts, office space, and sales assistants, managers must approve certain activities and approve certain financial expenditures. Managers also can provide assistance in maneuvering within the Firm and its policies, can be an important resource for ideas, can help develop and sustain client relationships, and can make assessments and recommendations regarding promotional opportunities. Morgan Stanley vests its nearly all-white management team with a substantial amount of discretion, and the Firm's managers exercise that discretion in a way that disadvantages African-Americans, as managers steer business opportunities to white FAs and do not provide African-American broker with the same level of resources and support as their white counterparts.

25. African-Americans are also disadvantaged by Morgan Stanley's discriminatory policies and practices regarding partnerships, or teams, among FAs. These partnerships are formed at the direction and/or with the approval of management, and act to steer assets and business opportunities to non African-American FAs, including trainee FAs, who would not otherwise receive these assets and opportunities. African-American FAs, unlike their white counterparts, do not benefit as a class from partnerships. Partnerships often protect the beneficiaries of past discrimination and prevent their accounts from being distributed in an equitable fashion. African-Americans are largely excluded from favorable teams. As a result of stereotypes and discrimination, the skills and contributions of African-American FAs are not valued, and they are not selected or permitted to join partnerships as equal partners. On the rare

occasions when African-Americans are invited to join a team, the partnership often becomes a vehicle to cannibalize their books of business.

26. The Plaintiffs who worked as FAs or Trainee FAs were denied the same business opportunities, sales and managerial support, and partnership opportunities as their colleagues who were not African-American.

27. Defendant also employs management grooming, assessment, training and selection practices that disadvantage African-Americans. Defendant maintains "tap on the shoulder" management grooming and selection practices that systemically exclude African-Americans from branch management, and from most management-feeder positions, like Sales Manager and Assistant Branch Manager positions. Some African-American FAs were well qualified to join management but were never groomed for management opportunities. Similarly situated non-African-American FAs, including those who never expressed interest in management, were approached about management opportunities, groomed for management positions, and assigned to management or feeder positions or sent to management training.

28. Some African-Americans were experienced, successful producing managers and were well qualified to become branch managers. Consistent with Defendant's pattern of discrimination, each was passed over for promotion to branch management positions in favor of less-qualified individuals who were not African-American.

**Pattern Allegations**

29. Defendant has and is engaged in an ongoing nationwide pattern and practice of race discrimination and retaliation and intentionally employs company-wide policies and practices that have a disparate impact on African-Americans. Defendant's nationwide pattern and practice

11

of discrimination, harassment and retaliation against African-Americans includes, but is not limited to, the following practices:

a) failing to recruit and hire African-Americans;

b) failing to promote African-Americans, including to management;

c) underutilizing African-Americans and engaging in job segregation;

d) denying African-American trainee brokers the same opportunities and support as trainees who are not African-American, and treating African-American trainee brokers less favorably than trainees who are not African-American;

e) employing uniform company-wide employment and compensation policies that disadvantage African-Americans, including, but not limited to, the Firm's national compensation plans, account distribution and "power ranking" policies, and team policies;

f) employing discriminatory hiring, compensation and promotion practices;

g) taking race and racial stereotypes into account when making employment decisions, including but not limited to decisions regarding teams and the assignment of walk-ins, leads, referrals, departing brokers' accounts and initial public offerings ("IPOs");

h) establishing, maintaining, and relying upon subjective, arbitrary and/or race-based criteria, practices and policies that work to the disadvantage of African-Americans;

i) making decisions regarding reductions-in-force in a manner that disadvantages African-Americans;

j) targeting the accounts and clients of African-American brokers and reassigning them to white brokers using a number of means, including partnerships;

k) failing to credit African-Americans for their experience on the same basis as non-African-Americans and failing to consider African-Americans for timely promotions or title changes on the same basis as non-African-Americans;

l) intentionally employing policies and practices that disproportionately disadvantage African-American brokers and/or that reinforce and continue the disparate impact of past discrimination, including but not limited to policies and practices regarding account distributions and partnerships;

m) failing to apply and enforce Morgan Stanley policies in a consistent, race-neutral fashion, to the detriment of African-American brokers;

n) employing a number of means to exclude African-Americans from income-generating opportunities, including but not limited to using

       partnerships to deny African-American brokers the opportunity to receive valuable account distributions or to otherwise participate in lucrative business opportunities;

    o) systematically paying African-Americans lower wages and/or denying African-Americans opportunities to increase their earnings, including commissions;

    p) negligently hiring and/or retaining individuals with known propensities to discriminate against or harass African-Americans;

    q) maintaining a corporate culture and a work environment that is hostile and offensive to or biased against African-Americans;

    r) retaliating against African-Americans who complain of discrimination;

    s) intentionally employing policies and practices that have a disparate impact on African-Americans; and

    t) terminating African-Americans on account of race and/or due to diminished performance and/or production that was lower than it would have been but for the unlawful conduct of Morgan Stanley.

30. The discrimination and retaliation described above is ongoing and constitutes a continuing violation of the civil rights laws.

31. Each of the Plaintiffs was subjected to some, but not all, aspects of the above pattern and practice of systemic discrimination and was harmed as a result of Defendant's unlawful conduct.

32. The problems of race discrimination at Morgan Stanley are national in scope. The Plaintiffs worked at Morgan Stanley branch offices in Illinois, Ohio, Maryland, and Nevada.

33. Although they worked in different offices across the United States, Plaintiffs' experiences at Morgan Stanley were remarkably similar.

**Plaintiffs Were Injured as a Consequence of Defendants' Unlawful Conduct**

34. Plaintiffs lost wages and other benefits, suffered embarrassment and humiliation, and their careers were irreparably injured as a result of Morgan Stanley's conduct. Plaintiffs suffered loss of enjoyment of life, inconvenience and other nonpecuniary losses as a direct result of Morgan Stanley's conduct.

35. The actions of the Defendants have caused and continue to cause Plaintiffs substantial losses in earnings, management opportunities and other employment benefits, in an amount to be determined by a jury.

36. Defendant acted or failed to act as herein alleged with malice or reckless indifference to the protected civil rights of Plaintiffs. Plaintiffs are thus entitled to recover punitive damages in an amount to be determined by a jury.

## COUNT I
### RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. SECTION 1981

37. Plaintiffs reallege paragraphs 1 through 36 and incorporate them by reference as though fully stated herein as part of Count I of this Complaint.

38. Section 1977 of the Revised Statutes, 42 U.S.C. Section 1981, as amended, guarantees persons of all races the same right to make and enforce contracts, regardless of race. The term "make and enforce" contracts includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of contractual relationship.

39. Defendant maintained a nationwide set of uniform, discriminatory employment practices and engaged in a pattern or practice of systemic race discrimination against African-Americans that constitutes illegal intentional race discrimination in violation of 42 U.S.C. Section 1981.

40. Plaintiffs were subjected to and harmed by Defendant's systemic discrimination.

41. Defendant's unlawful conduct resulted in considerable harm to Plaintiffs.

42. Plaintiffs request the relief set forth below.

## COUNT II

### RETALIATION IN VIOLATION
### OF 42 U.S.C. SECTION 1981

43. Plaintiffs reallege paragraphs 1 through 42 and incorporate them by reference as though fully stated herein as part of Count II of this Complaint.

44. It is unlawful under Section 1977 of the Revised Statutes, 42 U.S.C. Section 1981, as amended, to discriminate against an employee who has opposed or complained of an unlawful employment practice or has assisted or participated in another employee's claim of discrimination.

45. Some Plaintiffs engaged in protected action by opposing and complaining of Morgan Stanley's conduct that violated Section 1981.

46. Morgan Stanley took adverse actions and unlawfully retaliated against said Plaintiffs for engaging in the protected activity, in violation of Section 1981.

### PRAYER FOR RELIEF

47. WHEREFORE, Plaintiffs respectfully request that this Court find in their favor and against Defendant as follows:

   a.  Declare that Defendant's acts, conduct, policies and practices, as applied to these individual plaintiffs, violate 42 U.S.C. Section 1981;

   b.  Order appropriate equitable and injunctive relief to remedy the individual discrimination;

   c.  Order Plaintiffs reinstated to their appropriate positions, promotions and seniority and otherwise make Plaintiffs whole;

   d.  Award Plaintiffs the value of all compensation and benefits lost and that they will lose in the future as a result of Morgan Stanley's unlawful conduct;

    e.      Award Plaintiffs compensatory and punitive damages;

    i.      Award Plaintiffs prejudgment interest and attorneys' fees, costs and disbursements, as provided by law;

    j.      Award Plaintiffs such other make whole equitable, injunctive and legal relief as this Court deems just and proper to end the discrimination and fairly compensate Plaintiffs.

    k.      Award Plaintiffs such other relief as this Court deems just and proper.

## DEMAND FOR A JURY TRIAL

48. Plaintiffs hereby demand a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Respectfully submitted on behalf of Plaintiffs and those similarly situated,

/s/ Linda D. Friedman

STOWELL & FRIEDMAN LTD.

Linda D. Friedman
Suzanne E. Bish
STOWELL & FRIEDMAN LTD.
321 S. Plymouth Court
Suite 1400
Chicago, Illinois  60604
(312) 431-0888